Eric Stephenson #9779
Stephenson Law Firm PLLC
Attorney for Plaintiffs
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (844) 529-2112
Facsimile: (801) 906-5799
Email: Eric@Utahjustice.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| Luis Gallegos<br><br>      Plaintiff,<br><br>vs.<br><br>LVNV Funding LLC; Constantino Law Office P.C.; and Gregory Constantino,<br><br>      Defendants. | **RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Case Number: 2:14-cv-00516-DAK<br><br>Judge: Dale A. Kimball |

Plaintiff Luis Gallegos, by and through his attorney, and pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure, submits his Response Memorandum in Opposition to Cross Motion for Summary Judgment and respectfully requests for this Honorable Court to grant summary judgment in his favor and against Defendants for their violations of the Fair Debt Collection Practices Act, the Utah Consumer Sales Practices Act, and for invasion of privacy for intrusion upon seclusion. In the alternative, Plaintiff respectfully requests this Court deny Defendants' request for summary judgment under Rule 56d so discovery can occur before judgment is entered on Plaintiff's UCSPA and invasion of privacy claims. Plaintiff also expressly incorporates his arguments, facts, and objections set forth in his Reply Memorandum in Support of Motion for Partial Summary Judgment and his Motion for Discovery as if fully set forth herein pursuant to DUCivR 7-1.

# INTRODUCTION

All of Defendants' arguments center on the false premise that Luis Gallegos Sr., lived at the Plaintiff's address. The truth is that Luis Gallegos Sr., did not reside at the Plaintiff's address during their pursuit of payment for the debt. He lived in Mexico. Another simple truth is that Defendants' efforts to collect the debt were all addressed directly to the Plaintiff not his father. Numerous dunning letters demanding payment, two summons, two complaints, two requests for judgment, a request for payment of costs, and a request for access to private employment records, were all addressed to the Plaintiff at the address where only he resided. The debt was also reporting in the Plaintiff's credit reports. Under an objective view of these facts, the only reasonable conclusion is that Defendants were seeking to hold Plaintiff accountable for a debt he did not owe and therefore violated the Fair Debt Collection Practices Act. The leading authority confirms that is the correct result.

The same can be said for Defendants' Utah Consumer Sales Practices Act violations. Defendants pursued the Plaintiff knowing he did not owe the debt. He told them he did not owe the debt, he told them his father did not reside at the target address, and he pleaded with them to stop trying to collect it from him. Defendants even acknowledged Plaintiff did not owe the debt but still nonetheless continued litigating the two cases against him. They also knew or had reason to know that because Plaintiff's father resided in Mexico when Plaintiff was served with the two lawsuits, service of process by substitution was invalid and venue was improper. Merely demanding payment from the wrong person is deceptive under the UCSPA, but suing an innocent person twice is exactly the oppression, unfair surprise, and absence of a meaningful choice the courts consider to be unconscionable as well.

That same conduct also violates Plaintiff's right to privacy in his solitude and seclusion. Plaintiff had the right to be left alone. He had the right to not be forced into the stress, expense, and time consumption of litigation for a debt he did not owe. A rational person would consider being pursued relentlessly and sued twice for a debt they didn't owe as a substantial highly offensive intrusion into their solitude and seclusion.

Under the undisputed facts in this case, Plaintiff was harmed as a result of the Defendants' efforts to pursue payment for a debt he did not owe. Even the Defendants acknowledge that their conduct caused Plaintiff to suffer confusion, worry, and frustration. Accordingly, this Court should deny Defendants' request for summary judgment and grant summary judgment in favor of the Plaintiff for Defendants' violations of the Fair Debt Collection Practices Act, the Utah Consumer Sales Practices Act, and Plaintiff's invasion of privacy claims.

## OBJECTIONS

Plaintiff objects to statements 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 18 of the Defendants' Statement of Undisputed Material Facts as they are not set forth in good faith, misstate the facts of this case, were not formed after a reasonable inquiry under the circumstances, are being presented for improper purposes of harassment, unnecessary delay, or to needlessly increase the costs of the litigation, are not warranted by existing law, and set forth without evidentiary support.[1]

---

[1] Fed. R. Civ. P. 11(b)

Plaintiff objects to statements 3, 5, 6, 11, 18, 19, and 20 of the Defendants' Statement of Undisputed Material Facts as the materials on which they are based (Exhibits B, C, D, E, G, and H) are inadmissible and not properly before this Court.[2]

Plaintiff objects to Defendants' Exhibit B on the grounds that the exhibit lacks foundation, lacks any indicia of reliability, has not been properly authenticated, is irrelevant, is not the best evidence available, and contains hearsay and unsubstantiated factual and legal conclusions.[3]

Plaintiff objects to Defendants' Exhibit C on the grounds that the exhibit is not the best evidence available.[4]

Plaintiff objects to Defendants' Exhibit D on the grounds that the exhibit lacks foundation, has not been properly authenticated, contains hearsay, lacks any indicia of reliability, and is irrelevant.[5]

Plaintiff objects to Defendants' Exhibit E on the grounds that the exhibit lacks foundation, has not been properly authenticated, contains hearsay, lacks any indicia of reliability, and is irrelevant.[6]

Plaintiff objects to Defendants' Exhibit G on the grounds that the exhibit lacks foundation, has not been properly authenticated, is irrelevant, contains hearsay, lacks any indicia of reliability, and is not the best evidence available.[7]

---

[2] Fed. R. Civ. P. 56(c)(2)
[3] Def's Ex. B ([ECF No. 27-3](ECF No. 27-3))
[4] Def's Ex. C ([ECF No. 27-4](ECF No. 27-4))
[5] Def's Ex. D ([ECF No. 27-5](ECF No. 27-5))
[6] Def's Ex. E ([ECF No. 27-6](ECF No. 27-6))
[7] Def's Ex. G ([ECF No. 27-8](ECF No. 27-8))

Plaintiff objects to Defendants' Exhibit H on the grounds that the exhibit lacks

foundation, has not been properly authenticated, is irrelevant, contains hearsay, is not the best

evidence available, and lacks any indicia of reliability.[8] Exhibit H purports to be a court filing but

is not stamped by any court nor is it signed by the submitting attorney as would be required for a

court to accept the filing.[9]

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF ELEMENTS AND
MATERIAL FACTS

**Fair Debt Collection Practices Act**

1. "To prevail on a claim, under the Fair Debt Collection Practices Act (FDCPA), the

    plaintiff must establish that:

    a. Plaintiff has been the object of collection activity arising from a consumer debt,

    b. The defendant attempting to collect the debt qualifies as a debt collector under the

        FDCPA, and

    c. The defendant has engaged in a prohibited act or has failed to perform a

        requirement imposed by the FDCPA."

2. Among other things, prohibited conduct under the FDCPA includes:

    a. Falsely representing "the character, amount, or legal status of any debt."

    b. Using "any false representation or deceptive means to collect or attempt to collect

        any debt or to obtain information concerning a consumer."

---

[8] Def's Ex. H ([ECF No. 27-9](ECF No. 27-9))
[9] Utah R. Civ. P. 11(a)(1)

     c. Collecting or attempting to collect "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

3. "In determining the amount of liability in any action under [the FDCPA], the court shall consider, among other relevant factors … the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."

4. The FDCPA provides debt collectors a defense for claims brought against them under the FDCPA:

     a. "A debt collector may not be held liable in any action under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors."

     b. An FDCPA defendant using the bona fide error defense must prove "that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error."

5. In considering violations under the FDCAP [sic], courts apply the objective least sophisticated consumer standard, which "considers whether *the least sophisticated debtor would likely be misled by a communication*." However, the least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."

**Utah Consumer Sales Practices Act**

1. Utah Code Ann. § 13-11-4(2) requires that the plaintiff prove that a defendant has "committed a deceptive act or practice 'knowingly or intentionally.'"

2. Utah Code Ann. § 13-11-5 requires that an act or practice must be "unconscionable" to be a violation of the statute. "The unconscionability of an act or practice is a question of law for the court. If it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination." "In determining whether an act or practice is unconscionable, the court shall consider circumstances which the supplier knew or had reason to know."

**Invasion of Privacy**

1. Under Utah common law for invasion of privacy, the plaintiff must prove two elements by a preponderance of the evidence:

   a. that there was an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party, and

   b. that the intrusion would be highly offensive to the reasonable person.

**Plaintiff's Response**

**Fair Debt Collection Practices Act**

Objection. Rather than set forth just the statutory elements of a claim under the FDCPA, Defendants have inserted quotations from various cases as if they are trying to illicit agreement from the Plaintiff that those cases are applicable and determinative. Plaintiff submits that doing so is inappropriate under DUCivR 7-1and Fed. R. Civ. P. 56 and therefore objects. Plaintiff also

objects to Defendants' paragraph 3 on the additional grounds that it alters the plain language of the statue to incorrectly state the applicable standard for determining damages. Plaintiff sets forth the correct standard in his response below. Plaintiff objects to paragraphs 4 and 5 as they are unnecessarily duplicative and do not set forth the elements of any claim, but rather set forth the requirements of an affirmative defense Defendants have the burden to establish. Paragraph 5 also improperly attempts to set forth the standard for whether a "communication" is misleading to a consumer even though that is not an issue in the current cross motions for summary judgment.

Subject to the objection stated herein, Plaintiff hereby responds that the statutory elements of an FDCPA cause of action are as follows:

1. To prevail on a claim under the Fair Debt Collection Practices Act, Plaintiff must establish the following elements:

   a. Plaintiff is a consumer or other person harmed by a debt collector's failure to comply with the FDCPA.[10]

   b. The debt at issue is a consumer debt.[11]

   c. Defendants are debt collectors.[12]

   d. Defendants have violated or otherwise failed to comply with any part of the FDCPA.[13] In this case, such conduct includes, among other things;

      i. Falsely representing "the character, amount, or legal status of any debt."[14]

---

[10] 15 U.S.C. §§ 1692a(3), 1692c(d), and 1692k(a)
[11] 15 U.S.C. § 1692a(5)
[12] 15 U.S.C. § 1692a(6)
[13] 15 U.S.C. § 1692k
[14] 15 U.S.C. § 1692e(2)(A)

ii.   Using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[15]

iii.   Collecting or attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[16]

2. In determining the amount of liability for statutory damages under the FDCPA in an individual case, the court "shall" consider all relevant factors, including; "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional"[17]

3. The FDCPA is generally a strict liability statute, however, debt collectors may not be held liable "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[18]

**Utah Consumer Sales Practices Act**

Plaintiff agrees with Defendants' statement of elements under the Utah Consumer Sales Practices Act.

**Invasion of Privacy**

Plaintiff agrees with Defendants' statement of elements for invasion of privacy.

---

[15] 15 U.S.C. § 1692e(10)
[16] 15 U.S.C. § 1692f(1)
[17] 15 U.S.C. § 1692k(b)(1)
[18] 15 U.S.C. § 1692k(c)

**Defendants' Statement of Undisputed Material Facts:**

1. Plaintiff, Luis Gallegos (hereinafter "Plaintiff" or "Gallegos, Jr.") resides at 2261 N 450 W, Clearfield, Utah 84015-3529.

   **Response:** Agreed.

2. Plaintiff was born on April 26, 1983.

   **Response:** Agreed.

3. On September 28, 2012, the Credit One Bank, N.A., Visa account, with the account number of XXXX-XXXX-XXXX-6135 was placed with Constantino Law Office, P.C., for collection. As stated in the placement, the creditor was LVNV Funding LLC. As stated in the placement, the consumer was Luis Gallegos ("Gallegos, Sr."), born on March 31, 1960, with the social security number of XXX-XX-9939, and the residential address of 2261 N 450 W, Clearfield, Utah 84015-3529.

   **Response:** Objection. This statement of fact is not supported by admissible evidence as discussed above.[19] This statement also misstates the facts, lacks foundation, lacks relevancy, lacks any indicia of reliability, and contains inadmissible hearsay. Plaintiff further disputes this statement on the grounds that further discovery under Rule 56(d) is needed to discern the accuracy of the statement and discover the particular circumstances pertaining to the statement.[20] Plaintiff also disputes the assertion that Luis Gallegos Sr., lived at 2261 N 450 W, Clearfield, Utah 84015-3529, as that assertion is false.[21]

4. Plaintiff is the son of Gallegos, Sr.

---

[19] Fed. R. Civ. P. 56(c)(2)
[20] Fed. R. Civ. P. 56(d); *See* Eric Stephenson Decl., July 23, 2015
[21] *See* Ex. P-13, Luis Gallegos Decl.

**Response:** Agreed.

5. On or around September 28, 2012, Constantino Defendants sent letters addressed to Luis Gallegos at 2261 N 450 W, Clearfield, Utah 84015-3529, to inform Luis Gallegos, Sr. of the debt.

   **Response:** Agreed that Defendants sent Plaintiff collection letters, however, Plaintiff disputes that the exhibit referred to by this statement is wholly accurate or complete.[22] Plaintiff also disputes this statement on the grounds that further discovery under Rule 56(d) is needed to obtain the best evidence available pertaining to the statement.[23]

6. On or around October 22, 2012, Constantino Defendants requested Wasatch Constables to serve process for a 10-day summons and complaint against Gallegos, Sr. In this request, Constantino Defendants specified that process was to be served on or on behalf of Luis Gallegos with a date of birth of March 31, 1960.

   **Response:** Disputed. The summons and complaint were addressed to the Luis Gallegos residing at the Plaintiff's address which was the Plaintiff, not Luis Gallegos Sr.[24] Luis Gallegos Sr., was not a party to that lawsuit.[25] Plaintiff also objects to this statement as it is not supported by admissible evidence, misstates the facts, lacks foundation, lacks relevancy, lacks any indicia of reliability, and contains inadmissible hearsay.[26]

7. Defendants filed a lawsuit against Gallegos, Sr. on October 31, 2012.

---

[22] Ex. P-3, Answer (ECF No. 26-4); Ex. P-13, Luis Gallegos Decl. ¶¶ 2, 4, 19 and 20

[23] *Id.*; Fed. R. Civ. P. 56(d); *See* Eric Stephenson Decl.; Luis Gallegos Decl. ¶¶ 2, 4, 19, and 20

[24] Ex. P-1, 10-Day Summons (ECF No. 26-2); Ex. P-2, Complaint (ECF No. 26-3); Ex. P-13, Luis Gallegos Decl. ¶¶ 1 and 5-9

[25] *Id.*; *See* Ex. P-4, Order of Dismissal, (ECF No. 26-5)

[26] Fed. R. Civ. P. 56(c)(2)

**Response:** Disputed. Defendants filed a lawsuit against the Plaintiff, not Luis Gallegos Sr.[27] Luis Gallegos Sr., was not a party to that lawsuit.[28]

8. The purpose of the lawsuit Constantino Defendants filed against Gallegos, Sr. was to collect a debt in connection with the Credit One Bank account.

   **Response:** Disputed. The Defendants sued the Plaintiff, not Luis Gallegos Sr.[29] Plaintiff agrees that, according to the complaint filed in that case, the purpose of that lawsuit was to collect a debt in connection with an account originally owed to Credit One Bank N.A.

9. On November 14, 2012, Plaintiff wrote a letter addressed to the state court and to Constantino Defendants in response to the lawsuit filed against Gallegos, Sr. In this letter, Plaintiff clarifies that he is not the named debtor and that the debtor is his father, Luis Gallegos, Sr.

   **Response:** Disputed. The Defendants sued the Plaintiff, not Luis Gallegos Sr.[30] Plaintiff's letter was an answer under Rule 12 of the Utah Rules of Civil Procedure.[31] Luis Gallegos Sr., was not a party to that lawsuit.[32]

10. The state court dismissed for a lack of prosecution the Constantino Defendants' lawsuit against Gallegos, Sr. on October 21, 2013.

---

[27] Ex. P-1, 10-Day Summons (ECF No. 26-2); Ex. P-2, Complaint (ECF No. 26-3); Ex. P-3, Answer (ECF No. 26-4); Ex. P-4, Order of Dismissal, (ECF No. 26-5); *See* Ex. P-13, Luis Gallegos Decl.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] Ex. P-13, Luis Gallegos Decl. ¶¶ 15-16
[32] Ex. P-1, 10-Day Summons (ECF No. 26-2); Ex. P-2, Complaint (ECF No. 26-3); Ex. P-3, Answer (ECF No. 26-4); Ex. P-4, Order of Dismissal, (ECF No. 26-5); Ex. P-13, Luis Gallegos Decl. ¶¶ 1, 5, 6, and 7-9

**Response:** Disputed. The state court dismissed the lawsuit against the Plaintiff for lack of prosecution on October 21, 2013. Luis Gallegos Sr., was not a party to that lawsuit.[33]

11. On January 6, 2014, Constantino Defendants again requested Wasatch Constables to serve process for a 10-day summons and complaint against Gallegos, Sr. In this request, Constantino Defendants specified that process was to be served on or on behalf of Luis Gallegos with a date of birth of March 31, 1960.

    **Response:** Disputed. Defendants' sued the Plaintiff in this second lawsuit, not Luis Gallegos Sr.[34] Plaintiff also objects as Defendants' statement is not supported by admissible evidence, misstates the facts, lacks foundation, lacks relevancy, lacks any indicia of reliability, and contains inadmissible hearsay.[35]

12. Constantino Defendants filed a second lawsuit against Gallegos, Sr. on January 16, 2014.

    **Response:** Disputed. Defendants filed a second lawsuit against the Plaintiff on January 16, 2014.[36] Luis Gallegos Sr., was not a party to that lawsuit.[37]

13. On or around January 21, 2014, at approximately 12:48 p.m., Plaintiff called Constantino Law Offices ("CLO") to understand the nature of the service of process.

    **Response:** Disputed. Plaintiff called the Defendants on January 21, 2014 to find out why he was being sued for a debt that was not his and to determine whether or not he would be arrested.[38] Plaintiff was not calling to understand the nature of the service of process.[39]

---

[33] *Id.*
[34] Ex. P-10, Complaint ([ECF No. 26-11](#)); Ex. P-14, 10-Day Summons; Ex. P-13, Luis Gallegos Decl. ¶¶ 1, 5-8, 10
[35] Fed. R. Civ. P. 56(c)(2)
[36] Ex. P-10, Complaint ([ECF No. 26-11](#)); Ex. P-14, 10-Day Summons
[37] *Id.*; *See* Luis Gallegos Decl; Ex. P-11, Default Judgment ([ECF No. 26-12](#)); Ex. P-12, Order to Set Aside Judgment and Dismiss with Prejudice ([ECF No. 26-13](#))

14. CLO clarified that Plaintiff was not the Luis Gallegos named on the debt.

**Response:** Disputed. It was Plaintiff who clarified he was not the debtor.[40] Defendants initially stated that "we have an account against a Luis Gallegos at your address" and only realized Plaintiff was not the debtor after he gave them his date of birth and advised them he was a junior.[41]

15. CLO clarified that Plaintiff had been served on behalf of his father, Gallegos, Sr.

**Response:** Disputed. Luis Gallegos Sr., was not a party to that lawsuit.[42] Additionally, Defendants did not clarify Plaintiff had been served on behalf of his father. Defendants incorrectly assumed that was the case even though such service was insufficient as a matter of law under Utah Rule of Civil Procedure 4(d)(1)(A) because Gallegos Sr., resided in Mexico rather than at the Plaintiff's address at the time Plaintiff was served.[43]

16. On or around January 21, 2014, at approximately 2:19 p.m., Plaintiff called CLO a second time.

**Response:** Agreed.

17. In this second phone conversation, CLO again clarified that Plaintiff was not the Luis Gallegos who owed the debt and that he was not the same Gallegos named as a defendant [sic] underlying state court actions. CLO explained that Luis Gallegos, Sr., owed the debt,

---

[38] Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014, at 7:2-5 (ECF No. 27-2); *See* Luis Gallegos Decl.
[39] *See Id*.
[40] *Id*. at 2:21-3:4 and 4:4-10; Luis Gallegos Decl. ¶ 18
[41] *Id*. at 3:25-4:1; Luis Gallegos Decl. ¶ 18
[42] Ex. P-10, Complaint (ECF No. 26-11); Ex. P-14, 10-Day Summons; Ex. P-11, Default Judgment (ECF No. 26-12); Ex. P-12, Order to Set Aside Judgment and Dismiss with Prejudice (ECF No. 26-13); Ex. P-13, Luis Gallegos Decl. ¶¶ 1, 5-8, 10
[43] Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014, at 4:13-5:1, 5:15-24, and 6:9-10 (ECF No. 27-2)

was the named defendant in the underlying suits, and that Plaintiff was served on his father [sic] behalf.

**Response:** Disputed. Luis Gallegos Sr., was not a party to that lawsuit.[44] Furthermore, throughout this telephone call, Defendants continually referred to the "account" and only mentioned the lawsuit once in the context of advising Plaintiff that he could file an answer in the lawsuit.[45] Defendants also never advised Plaintiff that they were not seeking to hold him accountable for the debt and, in addition to the debt being reported in his credit reports, sent him a letter threatening to garnish his wages for the debt.[46]

18. The February 18, 2014 default judgment was entered against Gallegos, Sr., not Plaintiff.

**Response:** Disputed. Luis Gallegos Sr., was not a party to that lawsuit.[47] The lawsuit was against the Plaintiff.[48] Furthermore, Luis Gallegos Sr., resided in Mexico when the Plaintiff was served, so the state court could not lawfully enter a default judgment against him as both venue and service of process would have been improper.[49]

19. On March 17, 2014, Constantino Defendants submitted an Information Sheet for the Registry of Judgments, which provided information for the defendant, Luis Gallegos, in the second state action, including a date of birth of March 31, 1960, and a social security number of XXX-XX-9939.

---

[44] Ex. P-10, Complaint (ECF No. 26-11); Ex. P-14, 10-Day Summons; Ex. P-11, Default Judgment (ECF No. 26-12); *See* Luis Gallegos Decl.

[45] Defs.' Ex. F, Tr. of Telephone Conversation, January 21, 2014, 4:18-24 (ECF No. 27-7)

[46] *See Id*.; Luis Gallegos Decl. ¶¶ 20-21

[47] *See* Luis Gallegos Decl.; Ex. P-10, Complaint (ECF No. 26-11); Ex. P-11, Default Judgment (ECF No. 26-12); Ex. P-12, Order to Set Aside Judgment and Dismiss with Prejudice (ECF No. 26-13)

[48] *Id*.

[49] Utah R. Civ. P. 4(d)(1)(A); Utah Code Ann. § 78B-3-304(2); 15 U.S.C. § 1692i(2)

**Response:** Objection. This statement of fact is not supported by admissible evidence as is required and as discussed above.[50] This statement is also irrelevant. Plaintiff further disputes this statement on the grounds that further discovery under Rule 56(d) is needed to discern the accuracy of the statement and to discover the particular circumstances pertaining to the statement.[51]

20. The court in the underlying second state action listed the date of birth of the defendant as March 31, 1960.

**Response:** Objection. This statement of fact is not supported by admissible evidence as is required and as discussed above.[52] This statement is also irrelevant and contains inadmissible hearsay. Plaintiff further disputes this statement on the grounds that further discovery under Rule 56(d) is needed to discern the accuracy of the statement and to discover the particular circumstances pertaining to the statement.[53]

ARGUMENT

Luis Gallegos Sr., never lived at the Plaintiff's address. The 2261 N 450 W, Clearfield, Utah address at issue in this case belongs to the Plaintiff and only the Plaintiff. In fact, Luis Gallegos Sr., resided in Mexico when the Defendants sent Plaintiff multiple collection demand letters and filed and served Plaintiff with the two lawsuits. Nonetheless, all of the Defendants' arguments in both opposing and requesting summary judgment are premised on the fallacy that

---

[50] Fed. R. Civ. P. 56(c)(2)
[51] Fed. R. Civ. P. 56(d); *See* Eric Stephenson Decl., July 23, 2015
[52] Fed. R. Civ. P. 56(c)(2)
[53] Fed. R. Civ. P. 56(d); *See* Eric Stephenson Decl., July 23, 2015

Luis Gallegos Sr., lived at the Plaintiff's address. Because Defendants' argument centers on that incorrect fact, Defendants' arguments fail as a matter of course.

I.   IT IS UNDISPUTED THAT DEFENDANTS VIOLATED THE FDCPA BY PURSUING PLAINTIFF FOR A DEBT HE DID NOT OWE

   **a.   Defendants factual statements are incorrect**

Defendants' entire argument hinges on the fallacy that they pursued Plaintiff's father rather than the Plaintiff, but the evidence objectively shows that they were suing the wrong person and knew they were suing the wrong person.[54] First, the Defendants identified the defendant in both complaints as the Luis Gallegos residing at 2261 North 450 West Clearfield, Utah 84015.[55] Since Plaintiff is the only Luis Gallegos who resided at 2261 North 450 West Clearfield, Utah 84015 when Defendants filed and pursued those lawsuits, he is the only Luis Gallegos to which those lawsuits could have applied.[56] Indeed, for the second lawsuit, Defendants knew or should have known with a certainty that no other Luis Gallegos resided at the Plaintiff's address because Plaintiff had already told them so.[57]

Further demonstrating that they pursued Plaintiff and not his father, Defendants personally served Plaintiff at his address with both of the lawsuits and did not serve anyone else.[58] Defendants also requested judgment against the person they identified as the Luis Gallegos residing at 2261 North 450 West Clearfield, Utah 84015 on November 4, 2013 and

---

[54] *See* Defs.' Opp'n to Pl.'s Mot. for Summ. J. (ECF No. 27)
[55] Ex. P-2, Complaint (ECF No. 26-3) and Ex. P-10, Complaint (ECF No. 26-11)
[56] *See* Ex. P-13, Luis Gallegos Decl.; Ex. P-3, Answer (ECF No. 26-4); Ex. A, Tr. of Telephone Conversation (ECF No. 27-2); Defs.' Ex. F, Tr. of Telephone Conversation (ECF No. 27-7)
[57] Ex. P-3, Answer (ECF No. 26-4)
[58] Ex. P-1, 10-Day Summons (ECF No. 26-2); Ex. P-14, 10-Day Summons

again on February 18, 2014.[59] Again, at the time of both of Defendants' requests, Defendants

knew Plaintiff was the only Luis Gallegos residing at that address because he explicitly and

repeatedly told them his father lived in Mexico.[60] That they disregarded what they were told does

not create any actual material dispute of fact. Indeed, Defendants even swore under criminal

penalty that they were entitled to reimbursement of costs from the Luis Gallegos that resided at

that address[61] and requested the private employment records of that Luis Gallegos from the State

of Utah.[62] Adding to the certainty that Plaintiff was the target, is the fact that the debt was being

reported in Plaintiff's credit reports and he was receiving collection letters addressed directly to

him demanding payment of the debt.[63]

Given these facts, there is no good faith dispute on this issue. Defendants pursued the

Luis Gallegos residing at the Plaintiff's address and that was never Gallegos Sr.[64] Defendants

have fabricated a claim that Gallegos Sr., resided at that address but the undeniable truth is that

he did not. Indeed, even merely dunning a person not obligated to repay the debt as Defendants

did in this case violates the FDCPA "as a matter of law because it is, *ipso facto*, a false

representation about the status or character of the debt."[65]

---

[59] Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. ([ECF No. 26-6](#)); Ex. P-11, Default Judgment ([ECF No. 26-12](#))
[60] *See* Ex. P-13, Luis Gallegos Decl.; Ex. P-3, Answer ([ECF No. 26-4](#)); Ex. A, Tr. of Telephone Conversation ([ECF No. 27-2](#)); Defs.' Ex. F, Tr. of Telephone Conversation ([ECF No. 27-7](#))
[61] Ex. P-7, Mem. of Costs ([ECF No. 26-8](#))
[62] Ex. P-15, Mot. for Order to Permit Access to Def's Employment Records; Ex. P-16, Notice to Submit; Ex. P-17, Order to Permit Access to Def's Employment Records
[63] Ex. P-13, Luis Gallegos Decl. ¶¶ 2, 4, 20, and 21; Defs.' Ex. C, Collection Letters ([ECF No. 27-4](#)); Ex. P-3, Answer ([ECF No. 26-4](#))
[64] Ex. P-13, Luis Gallegos Decl. ¶¶ 7-10, 13, and 16-17
[65] *Owens v. Howe*, No. 04-CV-152, 2004 U.S. Dist. LEXIS 22728 at *34-35 (N.D.Ind. Nov. 8, 2004)(*unpublished*)

For these reasons, the least sophisticated consumer would reasonably conclude as Plaintiff concluded—that he was being sued in the two lawsuits. No other Luis Gallegos lived at that address, no other Luis Gallegos was ever served, no other Luis Gallegos was identified in the Defendants' complaints, and the Defendants knew Luis Gallegos Sr., did not reside at the Plaintiff's address. Moreover, service of process and venue would have both been improper if Gallegos Sr., was actually the target because he resided in Mexico when the Plaintiff was served with the two lawsuits.[66] Add in the credit reporting in Plaintiff's name and the Defendants' complete refusal to stop litigating the cases after being told they were pursuing the wrong person and the only objective conclusion is that Defendants were trying to hold Plaintiff accountable for a debt he did not owe.

### b. Courts have consistently rejected the Defendants' arguments attempted here

Even though Defendants' factual statements are patently false, their legal arguments are also unsound. Whether or not Defendants intended to pursue Plaintiff or someone else is irrelevant. The Fair Debt Collection Practices Act is a strict liability statute and does not require a showing of intentional conduct on the part of a debt collector.[67] Furthermore, a single violation of the FDCPA is sufficient to establish civil liability.[68] As a long-standing player in the industry, Defendants should bear the brunt of the risk of their decision to intentionally disregard FDCPA

---

[66] Ex. P-13, Luis Gallegos Decl. ¶¶ 7-10, 13, and 16-17; Ex. P-3, Answer (ECF No. 26-4)
[67] *See e.g., Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2nd Cir.1996)
[68] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir.1993)

requirements.[69] "It does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."[70]

Numerous other courts have already conclusively established that that it violates the FDCPA to pursue a consumer for a debt he does not owe.[71] The reason is because protecting innocent consumers who don't owe a debt but are nonetheless subjected to harassment by debt collectors is one of the main reasons the FDCPA exists.[72] "Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer."[73] For example, in *Bodur v. Palisades Collection*, the court held that a debt collector violated the FDCPA when they tried to collect a debt from a consumer with a name that was similar, but not identical, to the actual debtor.[74] Under the least sophisticated consumer standard, the *Bodur* court held it was reasonable for the consumer to conclude he was the target of the collection activity since the collector continued in its efforts to try to make the consumer liable for a debt he did not owe.[75] In its decision, the *Bodur* court cited

---

[69] *See Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162, 1171-1172 (9th Cir. 2006

[70] *Cavallaro v. Law Offices of Shapiro & Kriesman*, 933 F. Supp. 1148, 1153 (E.D.N.Y. 1996) *quoting Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir.1996); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)

[71] *See, e.g*., Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 254 & n.18 (S.D.N.Y. 2011) (collecting cases in which "[d]istrict courts have found that 'an attempt to collect a debt from a non-debtor'" violates §§ 1692e(a)(2) and 1692(10))

[72] See S.Rep. No. 382, 95th Cong. 1st Sess. 4 reprinted in 1977 U.S.Code Cong. & Admin.News 1695, 1699 (noting one purpose of Act is to prevent debt collectors from "dunning the wrong person....")

[73] H.R.Rep No. 1202, 94th Cong.2d Sess. 5

[74] *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 256 (S.D.N.Y. 2011)

[75] *Id.* at 256

an abundance of other cases to support its rejection of the same arguments defendants attempt in this case.[76]

Another case directly on point with this one is *Johnson v. Bullhead Investments* in which the court applied the least sophisticated consumer standard to find an FDCPA violation had occurred when a debt collector served a consumer with a summons at her residential address that was directed to a person with almost the same name after the consumer had informed the collector she was not the debtor.[77] That court also held it was reasonable for the consumer to conclude that the debt collector was still trying to hold her responsible for the debt because it continued to pursue her for the debt after she provided proof she was not the debtor.[78] The court stated, "when a debt collection agency continues to hound a consumer even after she has provided them with clear proof that she is not the true debtor, and when it files a lawsuit that is served at her residential address, an unsophisticated consumer would reasonably believe that the collector is still trying to make her liable for the debt."[79]

Both of those cases, and the numerous other cases cited therein, are strikingly similar to this case. Here, Defendants sent Plaintiff several collection letters demanding payment of a debt he did not owe.[80] Unlike the cases above however, the letters were not addressed to someone with a similar but different name.[81] The Defendants letters were addressed directly to the

---

[76] *Id.* at 254 & n.18
[77] *Johnson v. Bullhead Invs., LLC*, No. 09CV639, 2010 WL 118274 at *5 (M.D.N.C. Jan. 11, 2010) (*unreported*)
[78] *Johnson v. Bullhead Invs., LLC*, 2010 WL 118274 at *6
[79] *Id.* at *5
[80] Defs.' Ex. C, Collection Letters (ECF No. 27-4)
[81] *Id.*

Plaintiff at his home address where no other person by the same name lived.[82] Defendants then sued the Plaintiff and he answered the complaint by informing the Defendants that he was not the debtor and that the debtor did not reside at his address.[83] In addition to the lawsuit, the debt was also being reported in the Plaintiff's credit reports as if he was the debtor.[84]

Almost a year later, the court dismissed the case against Plaintiff but immediately thereafter Defendants nonetheless requested judgment.[85] In doing so, Defendants falsely represented that their client LVNV Funding was entitled to judgment against the Luis Gallegos residing at the Plaintiff's Clearfield address—the Plaintiff— "as a matter of law."[86] They also represented that the same Luis Gallegos was the debtor, owed their client money, had received demands to repay that money, had failed to repay that money, and agreed to pay interest for the money he allegedly borrowed but all of that was patently false.[87] Indeed, not only was the Plaintiff not the debtor and therefore not responsible for the alleged debt, but the case was dismissed.[88] Defendants were not entitled to the relief they requested against anyone.[89]

But that did not end the matter. After the court denied their request for judgment in the dismissed first case, Defendants filed a second lawsuit, again, addressed to the Plaintiff and served at the address Defendants knew did not belong to the actual debtor.[90] Plaintiff then called

---

[82] Ex. P-3, Answer ([ECF No. 26-4](#)); Defs.' Ex. A, Tr. of Telephone Conversation ([ECF No. 27-2](#)); Defs.' Ex. F, Tr. of Telephone Conversation ([ECF No. 27-7](#))
[83] *Id*.
[84] Ex. P-3, Answer; Defs.' Ex. F, Tr. of Telephone Conversation ([ECF No. 27-7](#))
[85] Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. ([ECF No. 26-6](#))
[86] *Id*. at 3
[87] *Id*.
[88] Ex. P-4, Order of Dismissal ([ECF No. 26-5](#))
[89] *Id*.
[90] Ex. P-10, Complaint ([ECF No. 26-11](#))

the Defendants and informed them he was not the debtor, but even after acknowledging Plaintiff was not the debtor, they still requested and received a default judgment against him.[91]

Under these circumstances, the least sophisticated consumer—an objective standard—would conclude that they are the party being pursued for the debt.[92] Nevertheless, requiring the Plaintiff to believe that he is the actual debtor would circumvent Congressional intent,

> allow[ing] unscrupulous debt collectors, and particularly buyers of junk debt who cannot verify the accuracy of the debts or the identities of the debtors, to simply file debt collection actions with impunity against all persons having a similar name as the debtor, on the chance that one of the named defendants is the true debtor, or that one of the named defendants will simply pay the debt allegedly owed under the threat of having a judgment obtained against them, with a resulting levy against their property.[93]

Defendants undisputedly pursued the Plaintiff for a debt he did not owe. In doing so they falsely represented "the character, amount, or legal status of any debt,"[94] used false representations or deceptive means to collect or attempt to collect the debt,[95] and collected or attempted to collect amounts not expressly authorized by the agreement creating the debt or permitted by law.[96] Accordingly, Plaintiff is entitled to judgment against the Defendants for violating the Fair Debt Collection Practices Act.

---

[91] Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-2); Defs.' Ex. F, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-7)
[92] *Johnson v. Bullhead Invs., LLC*, No. 1:09CV639, 2010 WL 118274 at *5 (M.D.N.C. Jan. 11, 2010)
[93] *Johnson v. Bullhead Invs., LLC*, 2010 WL 118274 at *6
[94] 15 U.S.C. § 1692e(2)(A)
[95] 15 U.S.C. § 1692e(10)
[96] 15 U.S.C. § 1692f(1)

### c. The Defendants are not entitled to the bona fide error defense

Under the FDCPA, a debt collector may escape liability for some FDCPA violations if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[97] Defendants have failed to meet those requirements.

First, Defendants' violations were not unintentional or in error. In fact, Defendants never actually argued that its violations were unintentional or in error.[98] That failure is alone fatal to the bona fide error defense as it only applies to violations that are not intentional and resulted from a bona fide error.[99] Rather than establish what errors occurred as required, Defendants instead protested *ad nauseam* that the only error was the Plaintiff's for believing he was the target of their collection efforts.[100] That is not sufficient. To be entitled to summary judgment by reason of this defense, the Defendants were required to "establish a bona fide error **for each and every alleged violation** of the FDCPA."[101] Given that Defendants have not identified any specific error or violation, and in fact, have expressly denied that any error or violation occurred, Defendants have categorically failed to meet this requirement.[102] Under the plain language of the statute, Defendants cannot establish an entitlement to the bona fide error defense while simultaneously asserting they committed no errors.[103] "[I]f the bona fide error defense were

---

[97] 15 U.S.C. § 1692k(c)
[98] *See* Defs.' Opp'n to Pl.'s Mot. for Summ. J., ([ECF No. 27](ECF No. 27))
[99] 15 U.S.C. § 1692k(c)
[100] *Id.*
[101] *Caputo v. Professional Recovery Services, Inc.*, 261 F.Supp.2d 1249 (D. Kan. 2003) (*emphasis added*)
[102] *See* Defs.' Opp'n.
[103] 15 U.S.C. § 1692k(c)

interpreted as broadly as defendant suggests it should be, then every debt collector could avoid the FDCPA by simply asserting that it believed its offending conduct did not violate the Act."[104]

On the other hand, the Plaintiff has shown that the Defendants' violations were intentional and not the result of any bona fide error. For starters, Defendants intentionally sent collection letters demanding payment from the Plaintiff for a debt he did not owe.[105] After they were told they were pursuing the wrong person and the case was dismissed, Defendants intentionally requested judgment in the first case.[106] Then, knowing the name and address associated with the case did not belong to the actual debtor, Defendants intentionally filed and served the second case on who they knew to be an innocent party.[107] After the improper service, Defendants then requested and received judgment in the second case fully aware they were pursuing an innocent person rather than the actual debtor.[108] Defendants even requested Plaintiffs' private employment information from the State after they were repeatedly told he was not the debtor.[109]

Everything Defendants did to pursue those lawsuits was intentional as was Defendants' deliberate disregard for the fact that they were pursuing the wrong person. Defendants knew Plaintiff did not owe the debt but nonetheless pursued him for it and by so doing falsely represented "the character, amount, or legal status" of the debt[110] and illegally used "any false

---

[104] *Hartman v. Meridian Financial Services, Inc*., 191 F.Supp.2d 1031, 1045-46 (W.D.Wis. 2002)
[105] Ex. P-3, Answer
[106] Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6)
[107] Ex. P-10, Complaint (ECF No. 26-11)
[108] Ex. P-14, 10-Day Summons; Ex. P-11, Default Judgment (ECF No. 26-12)
[109] Ex. P-15, Mot. for Order to Permit Access to Def's Employment Records; Ex. P-16, Notice to Submit; Ex. P-17, Order to Permit Access to Def's Employment Records
[110] 15 U.S.C. § 1692e(2)(A)

representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[111] Defendants also intentionally attempted to collect amounts from the Plaintiff that were not "expressly authorized by the agreement creating the debt or permitted by law."[112]

But Defendants' pursuit of an innocent person is especially egregious, and therefore not bona fide or unintentional, given that this is not an isolated case. In a similar case filed against the Defendants only weeks before this case, the Defendants likewise pursued an innocent consumer who they knew did not owe the debt.[113] In that case, the Defendants did not obtain a judgment against the innocent party but nonetheless knowingly garnished her wages four separate times.[114] This repeated theme of knowingly pursuing innocent parties establishes that the Defendants' violations were intentional and not bona fide. In determining whether an error is "bona fide," courts have applied the traditional definition of "'made in good faith; inadvertently; without fraud or deceit'" and "'faithfulness to one's duty or obligation.'"[115]

Defendants also failed to meet the requirements of the reasonable procedures prong of the defense. Defendants argued that they employ two, and only two, procedures for generically "making sure that errors in their debt collection practice do not occur."[116] Notoriously absent from their argument, however, is any evidentiary support to demonstrate that any such procedures actually exist, are regularly employed, are regularly maintained, or how those two

---

[111] 15 U.S.C. § 1692e(10)

[112] 15 U.S.C. § 1692f(1)

[113] *See Reid v. LVNV Funding LLC*, No. 2:14CV471DAK, 2015 WL 926146 (D. Utah Mar. 4, 2015)

[114] *Id.*

[115] *Edwards v. McCormick*, 136 F.Supp.2d 795, 801 n. 8 (S.D.Ohio 2001) (*quoting* Black's Law Dictionary 168) (7th Cir. 1999)

[116] Defs.' Opp'n at18

procedures were reasonably adapted to avoid any specific error.[117] Instead of providing evidence

or even a cursory explanation of the application and maintenance of the two procedures,

Defendants merely argue in conclusory fashion that they have the two procedures and that the

two procedures somehow entitle them to complete absolution of all wrongdoing.[118] That is not

sufficient to establish an entitlement to the bona fide error defense since Defendants are required

to show exactly how their procedures were reasonably adapted to avoid the specific error at

issue.[119]

      Defendants also failed to establish how their two so-called "procedures" are reasonably

adapted to avoid any specific error. For example, Defendants argued, without evidentiary

support, that they provide process servers with the date of birth of the defendants "so the process

server will serve the appropriate person connected to the debt."[120] Left unexplained is how

providing the date of birth to a process server will somehow prevent Defendants from suing the

wrong person.[121] It is well-established that "[c]onclusory allegations ... do not establish an issue

of fact under [r]ule 56(c)."[122] "To withstand summary judgment, the nonmoving party must

come forward with specific facts showing that there is a genuine issue for trial."[123] Defendants

also leave to the imagination how providing the date of birth is reasonably adapted to prevent

---

[117] *See* Defs.' Opp'n

[118] *Id.* at18-19

[119] 15 U.S.C. § 1692k(c); *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)

[120] Defs.' Opp'n at18

[121] *Id.*

[122] *Baker v. Penn Mut. Life Ins. Co*., 788 F.2d 650, 653 (10th Cir. 1986)

[123] *Harrison v. Wahatoyas, L.L.C*., 253 F.3d 552, 558 (10th Cir. 2001) (*quotations and citations omitted*)

them from asserting an entitlement to judgment as a matter of law after being explicitly informed they served the wrong person and that the case was dismissed.[124]

Defendants' other so-called "procedure" is even more gravely defective. Defendants argued without evidentiary support that they sent collection letters to the Luis Gallegos at the Plaintiff's address "so he could clarify any problems by contacting CLO."[125] They completely disregard the fact that dunning a person not obligated to repay the debt violates the FDCPA "as a matter of law because it is, *ipso facto*, a false representation about the status or character of the debt."[126] Defendants also fail to explain how sending collection letters is reasonably adapted to prevent any specific error nor do they illuminate what legal theory allows them to shift their statutory burden to ensure Defendants collect from the actual debtor to an innocent consumer.[127] They also don't make any attempt to explain whether this is an actual procedure or just something they did in this particular case or how sending collection letters to the wrong person is somehow reasonably calculated to prevent them from suing the wrong person.[128]

It should also be noted that both "procedures" Defendants claim to have, share a 100% failure rate in this case as both failed to prevent Defendants from pursuing the two cases against the wrong person. By any standard, a 100% rate of failure is unreasonable.

Because Defendants have failed to meet any of the requirements of the bona fide error defense, this Court should enter summary judgment in Plaintiff's favor.

---

[124] *See* Defs.' Opp'n
[125] *Id*. at19
[126] *Owens v. Howe*, No. 04-CV-152, 2004 U.S. Dist. LEXIS 22728 at *34-35 (N.D.Ind. Nov. 8, 2004)(*unpublished*)
[127] *Id*.
[128] *See* Defs.' Opp'n

II.    DEFENDANTS' CONDUCT WAS BOTH DECEPTIVE AND UNCONSCIONABLE UNDER THE UTAH CONSUMER SALES PRACTICES ACT

Defendants knowingly and intentionally sued Plaintiff on two separate occasions for a debt he did not owe. In both lawsuits, Plaintiff directly told Defendants that he was not the debtor and that his father did not live at his address.[129] Even so, in both cases the Defendants knowingly and intentionally disregarded what they were told and requested judgment against the Plaintiff, the only Luis Gallegos residing at the Plaintiff's address.[130] They knew the actual debtor lived in Mexico and that they had served an innocent consumer, but Defendants nonetheless continued litigating both cases against the Plaintiff.[131] Those pursuits were deceptive and unconscionable under the Utah Consumer Sales Practices Act.

Under the UCSPA, any deceptive act or practice by a supplier is prohibited "whether it occurs before, during, or after the transaction."[132] The statute provides categories of conduct considered *per se* deceptive, but under the plain language of the statue that list is not exhaustive.[133] Whether deceptive or not, conduct may also be considered unconscionable under the UCSPA.[134] The question of unconscionability is a question of law for the court.[135] In making that determination, "the parties shall be given a reasonable opportunity to present evidence as to

---

[129] Ex. P-3, Answer (ECF No. 26-4); *See* Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-2);  *See also* Defs.' Ex. F, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-7)
[130] Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6); Ex. P-11, Default Judgment (ECF No. 26-12)
[131] *Id.*
[132] Utah Code Ann. § 13-11-4(1)
[133] Utah Code Ann. § 13-11-4(2)
[134] Utah Code Ann. § 13-11-5
[135] Utah Code Ann. § 13-11-5(2)

its setting, purpose, and effect."[136] Moreover, "[i]n determining whether an act or practice is unconscionable, the court shall consider circumstances which the supplier knew or had reason to know."[137]

### a. Pursuing Plaintiff for a debt he did not owe is deceptive

It is undisputed that the Defendants knowingly and intentionally pursued the Plaintiff for a debt he did not owe. First, Defendants sent the Plaintiff several dunning letters demanding repayment of the debt.[138] Then, Defendants filed two lawsuits addressed to the Luis Gallegos residing at the Plaintiffs address[139] and served those lawsuits personally on the Plaintiff—the only Luis Gallegos that resided at that address.[140] On both occasions, Plaintiff told the Defendants' process server he was not the debtor and that the debtor did not reside at his address.[141] In the first case, Plaintiff even filed an answer to the complaint under Rule 12 of the Utah Rules of Civil Procedure in which he told the Defendants directly that he was not the debtor.[142] In the second case, he notified the Defendants by telephone to stop them from garnishing his wages and having him arrested.[143] Despite these notifications, Defendants nonetheless continued litigating both cases against the Plaintiff.

Suing an innocent party is considered *per se* deceptive under at least three different provisions of the UCSPA. First, suing a person for a debt he does not owe violates the UCSPA

---

[136] Utah Code Ann. § 13-11-5(2)
[137] Utah Code Ann. § 13-11-5(3)
[138] Ex. P-13, Luis Gallegos Decl. ¶ 2; Defs.' Ex. C, Collection Letters (ECF No. 27-4)
[139] Ex. P-2, Complaint (ECF No. 26-3) and Ex. P-10, Complaint (ECF No. 26-11)
[140] Ex. P-1, 10-Day Summons (ECF No. 26-2); Ex. P-14, 10-Day Summons
[141] Ex. P-13, Luis Gallegos Decl. ¶¶ 12-13 and 17
[142] Ex. P-3, Answer (ECF No. 26-4)
[143] *See* Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-2); *See also* Defs.' Ex. F, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-7)

prohibition on charging a consumer for a transaction or portion of a transaction to which he did not agree.[144] Indeed, merely dunning Plaintiff for a debt he did not owe is a *per se* violation.[145] Second, representing that they were entitled to judgment when they were not violates the UCSPA prohibition on falsely representing the consumer transaction, "has sponsorship, approval, performance characteristics, accessories, uses, or benefits" that it did not have.[146] Plaintiff did not approve of the transaction at issue and he did not receive any benefit from that transaction so it did not have his sponsorship or approval nor did it have any performance characteristics, uses, or benefits to him.[147] But Defendants nonetheless explicitly represented falsely that Plaintiff had received the use and benefit of the debt and had approved of the debt when neither was true.[148] Even without explicitly stating so, merely attempting to enforce a consumer transaction against the Plaintiff for a debt he did not owe also falsely represents it had "performance characteristics, accessories, uses, or benefits" that it did not have since it did not apply to him at all.[149] Finally, Defendants' agent who served Plaintiff falsely told Plaintiff that he "was required to sign the paperwork and resolve the matter in court" even though there was no such requirement.[150] By forcing Plaintiff to sign legal documentation in such coercive conditions

---

[144] Utah Code Ann. § 13-11-4(2)(r)

[145] *Id.*; *See also Owens v. Howe*, No. 04-CV-152, 2004 U.S. Dist. LEXIS 22728 at *34-35 (N.D.Ind. Nov. 8, 2004)(*unpublished*)(*finding a per se violation of the FDCPA for dunning an innocent consumer for a debt he did not owe*)

[146] Utah Code Ann. § 13-11-4(2)(a)

[147] Ex. P-13, Luis Gallegos Decl. ¶ 11; *See also* Ex. P-3, Answer (ECF No. 26-4)

[148] Ex. P-2, Complaint (ECF No. 26-3); Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6); Ex. P-10, Complaint (ECF No. 26-11)

[149] Utah Code Ann. § 13-11-4(2)(a)

[150] Ex. P-13, Luis Gallegos Decl. ¶ 14

for a debt he did not owe, Defendants violated the UCSPA prohibition on including a waiver of the Plaintiff's rights in written documentation of the transaction.[151]

The Defendants also knowingly and deceptively made various deceptive representations in pursuing the lawsuits against the Plaintiff that violated the UCSPA. First and foremost, they falsely and repeatedly stated that Plaintiff owed the debt when he did not.[152] They also demanded payment from him through several collection letters[153] and represented to the court that they had a right "as a matter of law" to judgment against Plaintiff in a case that had been dismissed.[154] Defendants even demanded the court order Plaintiff to reimburse them for litigation costs in a case they lost.[155] Finally, the Defendants also falsely represented that they were entitled to an order to obtain Plaintiff's employment records when they absolutely were not.[156] Those statements were false but Defendants made each one intentionally and knowingly and therefore violated the UCSPA.

### b.  Pursuing Plaintiff for a debt he did not owe is unconscionable

According to the Utah Supreme Court unconscionability, "is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the

---

[151] Utah Code Ann. § 13-11-4(2)(q)
[152] Ex. P-2, Complaint (ECF No. 26-3); Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6); Ex. P-10, Complaint (ECF No. 26-11); Ex. P-11, Default Judgment (ECF No. 26-12)
[153] Defs.' Ex. C, Collection Letters (ECF No. 27-4)
[154] Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6)
[155] Ex. P-7, Memo. of Costs (ECF No. 26-8)
[156] Ex. P-15, Mot. for Order to Permit Access to Def's Employment Records; Ex. P-16, Notice to Submit; Ex. P-17, Order to Permit Access to Def's Employment Records

twofold purpose of the doctrine, **prevention of oppression and unfair surprise**."[157]
Unconscionability can be characterized as the "absence of meaningful choice" and a "gross
inequality of bargaining power."[158] It can also be found by examining the relative fairness of the
obligations assumed and finding terms "so one-sided as to oppress or unfairly surprise an
innocent party."[159] "[A]n overall imbalance in the obligations and rights imposed by the bargain"
also supports a finding of unconscionability.[160] For example, the Utah Supreme Court has found
that a landlord's repeated failure to repair a sewage problem after he had knowledge of its
existence was unconscionable.[161] Under the Utah Consumer Sales Practices Act, a showing of
unconscionability does not require proof of specific intent, but unconscionability can nonetheless
be found by considering circumstances which the supplier "knew or had reason to know."[162]

In this case, Defendants both knew and had reason to know they were pursuing the wrong
person but kept litigating nonetheless. For example, after Plaintiff filed his answer in the first
lawsuit, Defendants knew for a certainty they were pursuing the wrong person because Plaintiff
told them unequivocally that they were pursuing the wrong person. He made statements like, "I
am not the person whom you are seeking"[163] and "I was reluctant to take the summons since IT

---

[157] *Resource Management Co. v. Weston Ranch and Livestock*, 706 P.2d 1028, 1041 (Utah
1985)(*emphasis added*)
[158] *Id. at 1042* (*quoting Williams v. Walker-Thomas Furniture Co*., 350 F.2d 445, 449
(D.C.Cir.1965))
[159] *Resource Management*, 706 P.2d at 1041 (*citing Bekins Bar V Ranch v. Huth*, 664 P.2d 455,
462 (Utah 1983)); *Bill Stremmel Motors, Inc. v. IDS Leasing Corp*., 89 Nev. 414, 514 P.2d 654,
657 (1973)
[160] *Bekins Bar V Ranch v. Huth*, 664 P.2d at 462
[161] *Wade v. Jobe*, 818 P.2d 1006, 1017 (Utah 1991), *superseded by statute on other grounds as
stated in Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996)
[162] Utah Code Ann. § 13-11-5(3)
[163] Ex. P-3, Answer (ECF No. 26-4)

IS NOT ME."[164] He instructed Defendants to stop any further attempts to collect the debt from him. "I want to make it clear to the court, the attorney and Credit One Bank that I want them to immediately Cease and Desist any further attempts to collect a debt from the WRONG PERSON."[165] He even plead for Defendants to "stop billing me for a debt that is not mine" and "stop harassing me for a debt that is not mine."[166] Toward the end of his answer, Plaintiff even shouted, "FOR THE ONE HUNDRED TIME THIS IS NOT MY DEBT!!!!!!!![167] After that answer, there is no good faith dispute whether Defendants knew or had reason to know Plaintiff was not the debtor.

Defendants were also aware of other circumstances, such as Plaintiff's concern for being held responsible for a debt he did not owe, that make their conduct unconscionable.[168] For instance, Plaintiff's answer clarified that he believed he was the target of the lawsuit and was concerned he would be held responsible the debt. He stated, "I am afraid that this will continue on and that you guys will not take care of this [sic] I am also afraid that it will continue to hurt my credit but I am mostly terrified that you will continue this and start taking money from my checks at work."[169] He told the process server the same thing.[170] Indeed, why else would he file an answer in the lawsuit if he did not believe Defendants were attempting to hold him

---

[164] Ex. P-3, Answer (ECF No. 26-4) *(emphasis in original)*
[165] *Id. (emphasis in original)*
[166] *Id.*
[167] *Id. (emphasis and punctuation in original)*
[168] Utah Code Ann. § 13-11-5(3)
[169] Ex. P-3, Answer (ECF No. 26-4)
[170] Ex. P-13, Luis Gallegos Decl. ¶¶ 12-14 and 17

responsible for the debt? But despite the confusion, worry, and frustration that even the Defendants concede occurred, Defendants still nonetheless continued litigating the two cases.[171]

Under the prevailing authority, Defendants' conduct is unconscionable. Plaintiff was an innocent party with no bargaining power or meaningful choice whatsoever yet was nonetheless dragged into a situation where he had to endure the stress and frustration of two separate litigations.[172] He was hounded with dunning letters for a debt he did not owe, served by uniformed officers on two separate occasions, forced to file an answer in the first case, and in the second case, had to call to prevent his wages from being garnished and to avoid getting arrested.[173] "[N]o decent, fair-minded person would view [those] results without being possessed with a profound sense of injustice."[174] Plaintiff was abruptly deprived of any meaningful choice and such "oppression and unfair surprise" is precisely the conduct Utah law deems to be unconscionable.[175] Indeed, Defendants' repeated failures to stop pursuing the wrong person are somewhat similar to the landlord's repeated failure to repair a sewage problem that the Utah Supreme Court found to be unconscionable.[176]

There is no good faith dispute on this issue. Defendants both knew and had reason to know they were demanding payment from and suing an innocent person. Accordingly, this Court should grant summary judgment in Plaintiff's favor that Defendants violated the Utah Consumer Sales Practices Act by engaging in deceptive and unconscionable conduct.

---

[171] Defs.' Cross Mot. for Summ. J. at 18 (ECF No. 28)

[172] *See Resource Management Co. v. Weston Ranch and Livestock*, 706 P.2d 1028, 1042 (Utah 1985) (*quoting Williams v. Walker-Thomas Furniture Co*., 350 F.2d 445, 449 (D.C.Cir.1965))

[173] *See* Ex. P-13, Luis Gallegos Decl.; *See* Ex. P-3, Answer (ECF No. 26-4)

[174] *Woodhaven Apts. v. Washington*, 942 P.2d 918, 925 (Utah 1997)

[175] *Resource Management Co. v. Weston Ranch and Livestock*, 706 P.2d 1028, 1041 (Utah 1985)

[176] *Wade v. Jobe*, 818 P.2d 1006, 1017 (Utah 1991), *superseded by statute on other grounds as stated in Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996)

III.    DEFENDANTS INTENTIONALLY INVADED GALLEGOS' PRIVACY AND
        THOSE INTRUSIONS WERE SUBSTANTIAL AND HIGHLY OFFENSIVE

As this Court has previously recognized in another case against these same Defendants, the common law tort claim for invasion of privacy is routinely litigated in cases involving unfair or abusive collection conduct.[177] This is because Congress explicitly acknowledged the threat to consumers' inherent right to privacy in collection matters when it enacted the FDCPA; "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**."[178]

Like most states, the Utah courts have molded their analyses of invasion of privacy claims around the Second Restatement of Torts.[179] Under the Second Restatement of Torts, "[t]he tort of intrusion upon seclusion consists solely of an intentional interference with [Plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man."[180] The core question at issue "is whether the Defendants' actions substantially intruded upon Plaintiff's private life in a way that would be highly offensive to the reasonable person."[181] Accordingly, in order to prevail on a claim of intrusion upon seclusion, Gallegos must prove only two elements: (1) that there was an intentional substantial intrusion, physically or otherwise, upon his solitude or seclusion; and (2)

---

[177] *Reid v. LVNV Funding LLC*, No. 2:14CV471DAK, 2015 WL 926146, at *6 (D. Utah Mar. 4, 2015); *See* R. Hobbs et al., National Consumer Law Center, Fair Debt Collection §§9.3, 10.2.4.2 (7th ed. 2011)

[178] 15 U.S.C. § 1692(a) (*emphasis added*)

[179] *Jensen v. Sawyers*, 130 P.3d at 334, *citing Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 906-07 (Utah 1992)

[180] Restatement (Second) of Torts § 652B cmt. a (1977)

[181] *Jones v. United States Child Support Recovery*, 961 F.Supp. 1518 (D. Utah 1997)

the intrusion would be highly offensive to the reasonable person.[182] Traditionally, the language "highly offensive to the reasonable person" suggests a determination of fact for which a jury is uniquely qualified.[183] In any event, Gallegos has squarely met both elements.

In this case, Defendants did not cite to any authority or engage in any legal analysis to support their request for summary judgment on this issue. Instead, they simply concluded that their intrusions were neither substantial nor offensive.[184] In spite of their unsupported opinion, Defendants intentionally and callously engaged in a series of substantial offensive intrusions of Gallegos' privacy. Primarily, Defendants sued Gallegos for a debt he did not owe on two separate occasions.[185] Filing a lawsuit against a person is the very epitome of intruding a person's solitude and seclusion. Litigation is even more intrusive when the person is completely innocent and has nothing whatsoever to do with the subject of the lawsuit, and in this case, it happened twice.[186] As a result of the two lawsuits, Plaintiff was served with service of process twice, filed an answer, forced to call Defendants on multiple occasions to ensure he would not be arrested or have his wages garnished, and endured being repeatedly pursued for a debt he did not owe.[187] Defendants also requested access to Plaintiff's private employment records knowing he was not the debtor.[188]

---

[182] *Stien v. Marriott Ownership Resorts, Inc.,* 944 P.2d 374, 378-79 (Utah Ct. App. 1997) (*citing Turner v. Gen. Adjustment Bureau, Inc*., 832 P.2d 62 (Utah Ct. App.), *cert. denied*, 843 P.2d 1042 (Utah 1992))
[183] *See Cruz v. Montoya*, 660 P.2d 723, 729 (Utah 1983)
[184] Defs.' Cross Mot. for Summ. J. at 16-18 (ECF No. 28)
[185] *See* Ex. P-13, Luis Gallegos Decl.; Ex. P-2, Complaint (ECF No. 26-3) and Ex. P-10, Complaint (ECF No. 26-11)
[186] *Montgomery Ward v. Larragoite*, 467 P.2d 399, 81 N.M. 383, 1970 -NMSC-057 (N.M. 1970)
[187] *See* Ex. P-13, Luis Gallegos Decl.; Ex. P-3, Answer (ECF No. 26-4)
[188] Ex. P-15, Mot. for Order to Permit Access to Def's Employment Records; Ex. P-16, Notice to Submit; Ex. P-17, Order to Permit Access to Def's Employment Records

Under the Second Restatement of Torts, less invasive intrusions are considered sufficient to establish liability for an invasion of privacy. For example:

> Such an intrusion may occur through an investigation or examination into a person's private concerns, such as "by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." **The intrusion itself makes the defendant subject to liability**, even if there is no publication or other use of the information obtained.[189]

Each of the Defendants' invasions of Plaintiff's solitude and seclusion was intentional and, even individually, would be substantial enough to ground liability for invasion of privacy. Taken as a whole, however, these invasions rise well above what the prevailing jurisprudence considers actionable. For example, the Kansas Supreme Court has held that,

> 'a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy,' but...the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness."[190]

Other courts have also concluded that improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, **even if he owes it**, may, under certain circumstances, give rise to a right to damages for an invasion of privacy.[191] The Alabama

---

[189] Restatement (Second) of Torts § 652B cmt. b (1977)(*emphasis added*)

[190] *Dawson v. Assoc. Fin. Serv. Co. of Kansas, Inc.*, 215 Kan. 814, 529 P.2d 104, 110-11 (1974). (*quoting Housh v. Peth*, 99 Ohio App. 485, 135 N.E.2d 440, 449 (1955)).

[191] *Montgomery Ward v. Larragoite*, 467 P.2d 399, 81 N.M. 383, 1970 -NMSC-057 (N.M. 1970)(*emphasis added*)

Supreme Court has similarly held that 28 to 35 collection phone calls is enough to support an invasion of privacy claim as such calls "**far exceeded** the bounds of reasonableness" in the collector's efforts to collect a debt.[192] That court characterized such conduct as falling within the realm of a "systematic campaign of harassment."[193] Improper manipulation of the legal system to obtain payment has also been held to support a claim of invasion of privacy against a debt collector.[194]

Dunning Gallegos for payment and then forcing him to defend two lawsuits knowing he was not the actual debtor far exceeds the bounds of reasonableness.[195] Plaintiff pleaded to be left alone and expressed genuine concern about being held accountable, or even arrested, for a debt that was not his.[196] Despite his sincerity, Defendants disregarded his pleas and kept asserting an entitlement to judgment knowing he was not the debtor. The few dozen collection calls the *Barnwell* court characterized as a "systematic campaign of harassment" that "far exceeded the bounds of reasonableness" pale in comparison to the systematic campaign of harassment and abuse Defendants forced Gallegos to endure.[197] This is especially true considering that Gallegos is an innocent victim and never even arguably owed the debt Defendants were seeking to collect. Even the Defendants acknowledge that their conduct was intrusive enough to cause Gallegos to suffer from confusion, worry, and frustration.[198]

---

[192] *Jacksonville State Bank v. Barnwell*, 481 So.2d 863, 866 (Ala. 1985)(*emphasis added*)
[193] *Id. citing Housh v. Peth*, 99 Ohio App. 485, 135 N.E.2d 440 (1955), *affirmed*, 165 Ohio St. 35, 133 N.E.2d 340 (1956)
[194] *See Barnwell*, 481 So.2d at 866
[195] *Montgomery Ward v. Larragoite*, 467 P.2d 399, 81 N.M. 383, 1970 -NMSC-057 (N.M. 1970)
[196] Ex. P-3, Answer (ECF No. 26-4); Defs.' Ex. A, Tr. of Telephone Conversation, January 21, 2014 (ECF No. 27-2); Defs.' Ex. F, Tr. of Telephone Conversation (ECF No. 27-7)
[197] *Id*. at 866
[198] Defs.' Cross Mot. for Summ. J. at 18 (ECF No. 28)

It is also highly offensive that Defendants forced Gallegos to defend himself in court knowing he was not responsible for the debt.[199] Gallegos filed an unusually detailed answer clearly identifying himself as an innocent party but Defendants still refused to withdraw or correct their first lawsuit and even requested judgment after that lawsuit had been dismissed.[200] Incredibly, Defendants then filed a second lawsuit, again, knowing Plaintiff was not the debtor and that the debtor did not reside at the Plaintiff's address.[201] And even after two telephone calls in which Defendants actually acknowledge he is not the debtor, they still nonetheless, proceeded to obtain a judgment in the case and sought access to Plaintiff's private employment records.[202] "Where defendants received multiple and highly reliable confirmations of the inaccuracy of its records, the court must agree that a reasonable person could regard defendants' continued persistence … as 'highly offensive' conduct."[203]

Defendants knew and had reason to know they were pursuing the wrong person but still nonetheless persistently invaded Plaintiff's solitude and seclusion by demanding payment from him and even requested judgment twice when neither request was even arguably lawful. Under these circumstances, it is reasonable to conclude that these intrusions upon the Plaintiffs' seclusion were substantial and highly offensive. Accordingly, summary judgment is appropriate in the Plaintiff's favor on his claim for invasion of privacy.

---

[199] *Bauer v. Ford Motor Credit Co*., 149 F.Supp.2d 1106, 1111 (D.Minn. 2001)
[200] Ex. P-3, Answer (ECF No. 26-4); Ex. P-5, Mot. for J. on the Pleadings and Mot. for Summ. J. (ECF No. 26-6)
[201] Ex. P-10, Complaint (ECF No. 26-11)
[202] Ex. P-15, Mot. for Order to Permit Access to Def's Employment Records; Ex. P-16, Notice to Submit; Ex. P-17, Order to Permit Access to Def's Employment Records
[203] *Bauer v. Ford Motor Credit Co*., 149 F.Supp.2d 1106, 1111 (D.Minn. 2001).

## CONCLUSION

Defendants request for summary judgment is based on a false premise and therefore fails as a matter of law. Their actual target was the Plaintiff and regardless of whom they claim they intended to pursue, Plaintiff was harmed by their efforts. Even the Defendants acknowledged that their actions caused Plaintiff to suffer from confusion, worry, and frustration.

Plaintiff was dragged into litigation for a debt Defendants knew he did not incur—twice. He received demand letters for payment of that debt, the debt was being reported in his credit reports, and the entire time, Defendants knew he reasonably believed they were trying to hold him accountable for the debt. Despite the confusion, worry, and frustration they concede they caused, Defendants still did absolutely nothing to stop their efforts and even requested judgment on two separate occasions.

Under the undisputed facts of this case, summary judgment in Plaintiff's favor and against the Defendants is appropriate. Accordingly, Plaintiff respectfully requests for this Honorable Court to grant summary judgment in his favor and against Defendants for their violations of the Fair Debt Collection Practices Act, the Utah Consumer Sales Practices Act, and for invasion of privacy for intrusion upon seclusion. In the alternative, Plaintiff respectfully requests this Court deny Defendants' request for summary judgment under Rule 56d so discovery can occur before judgment is entered on Plaintiff's UCSPA and invasion of privacy claims.

DATED July 29, 2015.

/s/ Eric Stephenson
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2015 a true and correct copy of the foregoing

RESPONSE MEMORANDUM IN OPPOSITION TO CROSS MOTION FOR PARTIAL

SUMMARY JUDGMENT was filed through the Court's CM/ECF system which sent notice to

counsel of record.


/s/ Eric Stephenson
Attorney for Plaintiffs