**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **LUIS GALLEGOS,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **LVNV FUNDING LLC; CONSTANTINO LAW OFFICE P.C.; and GREGORY CONSTANTINO,** | **Case No.  2:14-CV-516-DAK** |
| **Defendants.** | |

This matter is before the court on the Plaintiff Luis Gallegos's Motion for Partial Summary Judgment and on Defendants Constantino Law Office, P.C., and Gregory Constantino's ("Constantino Defendants'"") Cross-Motion for Summary Judgment. Plaintiff's motion seeks summary judgment that the Constantino Defendants violated portions of the Fair Debt Collection Practices Act ("FDCPA"). The Constantino Defendants' motion seeks summary judgment that the Constantino Defendants did not violate the FDCPA or the Utah Consumer Sales Practices Act and that they did not invade Plaintiff's privacy. A hearing on the matter was held on March 2, 2016. At the hearing, Luis Gallegos was represented by Eric Stephenson. The Constantino Defendants were represented by Patrick Burt and Smith Monson. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Luis Gallegos was born on April 26, 1983, and, at all times relevant to this proceeding, resided at 2261 N 450 W, Clearfield, Utah 84015-3529 ("Clearfield Address"). Plaintiff is the son of Luis Gallegos, Sr., ("Gallegos, Sr.") who was born on March 31, 1960, and currently resides in Mexico. According to Plaintiff, Gallegos, Sr., has never lived at the Clearfield Address. Sometime before December 2010, Gallegos, Sr., incurred a financial obligation from Credit One Bank, N.A., and fell into default. On September 28, 2012, the Credit One Bank account was placed with Defendant Constantino Law Office, P.C., for collection against Gallegos, Sr. Defendant Gregory Constantino is a collection attorney who works at the Constantino Law Office. Defendant LVNV Funding LLC is the creditor for the relevant Credit One Bank account.

On October 24, 2012, the Constantino Defendants served Plaintiff with a 10-day summons and complaint at the Clearfield Address in an attempt to collect the debt. According to the Constantino Defendants, the Clearfield Address was listed as the address for Gallegos, Sr., in an affidavit provided to the Constantino Defendants by their client. Both the summons and the complaint referred to a Luis Gallegos residing at the Clearfield Address but did not give any additional identifying information, such as a birthdate or Social Security number, for the debtor.

On October 31, 2012, the Constantino Defendants filed a lawsuit against a Luis Gallegos residing at the Clearfield Address ("First Case"). Plaintiff answered the Constantino Defendants' complaint in a letter by informing them that he was not responsible for the alleged debt and that the actual debtor, Gallegos, Sr., did not live at the Clearfield Address. On October 21, 2013, the court dismissed the First Case for failure to prosecute.

On November 8, 2013, the Constantino Defendants requested a judgment in the First Case. On December 30, 2013, the court denied the request for a judgment because the case had already been dismissed.

On January 16, 2014, the Constantino Defendants filed a second lawsuit against a Luis Gallegos residing at the Clearfield Address to collect the debt ("Second Case"). On January 19, 2014, Defendants had a uniformed police officer serve Plaintiff with a 10-day summons and complaint at the Clearfield Address. After receiving the summons and complaint, Plaintiff made two phone calls to the Constantino Law Office to dispute the validity of the alleged debt; advise them of his name, address, birthdate, and Social Security number; and inform them that he is not responsible for repayment of the debt. During those phone calls, the Constantino Defendants acknowledged that Plaintiff was not responsible for the debt.

On February 14, 2014, the Constantino Defendants requested a default judgment in the Second Case. The court granted that judgment on February 18, 2014. On March 6, 2014, the Constantino Defendants requested access to the private employment records of the plaintiff in the Second Case. The court granted that order on April 1, 2014. On April 29, 2015, the court entered an order to set aside the judgment and to dismiss the case with prejudice.

On July 14, 2014, Plaintiff filed the present action alleging that Defendants violated the Fair Debt Collections Practices Act ("FDCPA"), violated the Utah Consumer Sales Practices Act ("UCSPA"), and invaded Plaintiff's privacy. On May 1, 2015, LVNV Funding was dismissed from the action with prejudice. Plaintiff then filed a Motion for Partial Summary Judgment against the remaining Defendants for their alleged violations of the FDCPA. The remaining Defendants filed a Cross-Motion for Summary Judgment on all of Plaintiff's claims.

## STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The initial burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has met its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty*, 304 F.3d at 971 (citing *Anderson*, 477 U.S. at 248). The Court must "construe the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," *id.* at 972 (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999)), but conclusory statements and attorney arguments submitted by the nonmoving party do not create a genuine issue of material fact, *see Adler v. Wal-mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998).

## THE FAIR DEBT COLLECTION PRACTICES ACT

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") in 1977 due to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a) (2012). The purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

action to protect consumers against debt collection abuses." *Id.* at § 1692(e). Because the FDCPA is considered to be a remedial statute, "it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

The FDCPA subjects debt collectors to civil liability for using "any false, deceptive, or misleading representations or means in connection with the collection of any debt" and provides a non-exhaustive list of specific conduct that would constitute a violation of the FDCPA. 15 U.S.C. § 1692e (2012). Proof of a single violation, potentially including merely sending dunning letters to a person not obligated to pay a debt, is sufficient to support a finding of summary judgment in favor of a plaintiff in an FDCPA action. *See id.* § 1692k(a); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993) (finding that two dunning letters violated "the FDCPA's strict prohibition against deceptive practices").

For purposes of this cause of action, relevant conduct specifically mentioned as a violation of the FDCPA includes: falsely representing "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *Id.* § 1692e(10), and collecting or attempting to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *Id.* § 1692f(1). Several courts have found that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (citation omitted) (collecting cases that have concluded that an attempt to collect a debt from a non-debtor violates the FDCPA).

To determine whether a debt collector has violated the FDCPA by engaging in any of this prohibited conduct, the majority of courts apply "an objective standard based on the 'least

sophisticated consumer.'" *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *see also Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997). This least-sophisticated-consumer standard serves the dual purpose of protecting "consumers, even the naïve and the trusting, against deceptive debt collection practices" and protecting "debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320. Under this standard, the least sophisticate consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care," but collection notices can still be considered "deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id.* at 1319.

Some courts consider the FDCPA to be a "strict liability statute" because it "does not ordinarily require proof of intentional violation." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). But courts have also concluded that "filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt" does not violate the FDCPA prohibitions against false representations or deceptive practices. *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (quoting *Deere v. Javitvh, Block, and Rathbone, L.L.P.*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006)).

Plaintiff argues that the undisputed facts show that the Constantino Defendants violated various provisions of the FDCPA by making false representations to Plaintiff to collect a debt and by attempting to collect amounts from Plaintiff not permitted by the contract or law. The Constantino Defendants argue that the undisputed facts show that they lawfully pursued a debt against Gallegos, Sr., and at no time represented to Plaintiff that he owed a debt or was being sued for the debt. Both sides seem to agree that Plaintiff received information at his house in the form of debt collection letters, summonses, and complaints in lawsuits that identified the debtor

only using the name Luis Gallegos and the Clearfield Address. Other related documents, such as the Information Sheet for the Registry of Judgments, letters from the Constantino Defendants to the process servers, and court records in the underlying lawsuits, include additional information, such as a birthdate and Social Security number, identifying the debtor as Gallegos, Sr.

Construing the facts in the light most favorable to the Constantino Defendants, it appears that the Constantino Defendants actually requested service on and filed lawsuits against Gallegos, Sr. But the applicable standard for analyzing potential violations of the FDCPA gives greater weight to Plaintiff's reasonable perceptions than to some technical reality. Under the least-sophisticated-consumer standard, potential violations of the FDCPA are analyzed from the perspective of the consumer, and some of the consumer's perceptions may be reasonable even though they are inaccurate. Although the least-sophisticated consumer is expected to read debt collection notices with care, the least-sophisticated consumer is not expected to perform research to verify or disprove the information in debt collection notices. From Plaintiff's perspective, Plaintiff received debt collection letters, summonses, and complaints that only referenced his name and address, and Gallegos, Sr., does not now and never has lived at Plaintiff's address. Therefore, Plaintiff reasonably believed that the Constantino Defendants were trying to pursue a debt against him that he did not owe. Because attempts to collect a debt from a non-debtor violate the FDCPA and because Plaintiff reasonably believed that the Constantino Defendants were attempting to collect a debt from him, the Constantino Defendants' actions were sufficient to qualify as a violation of the FDCPA.

Even though the Constantino Defendants' actions are sufficient to qualify as a violation of the FDCPA, some courts would not conclude that their actions violated the FDCPA if the actions were supported by a client's affidavit. Construing the facts in the light most favorable to

7

the Constantino Defendants, the Constantino Defendants sent initial collection letters and served the summons and complaint in the First Case against a Luis Gallegos living at the Clearfield Address based on information that they had received in an affidavit from their client. Assuming debt collectors can reasonably rely on information from creditors when first pursuing outstanding debts, the initial actions of the Constantino Defendants may not have violated the FDCPA.

However, a debt collector cannot continue to claim that it is reasonably relying on information from the creditor once the debt collector has received clear notice that some of the information may be incorrect. In this case, after the First Case was served on Plaintiff, Plaintiff wrote a letter to the court clearly stating that he was not the debtor, that his father was the debtor, and that his father did not live at the Clearfield Address. Even after receiving clear notice through Plaintiff's letter that they may have been given an incorrect address for the actual debtor, which would have made service of process in the First Case improper, the Constantino Defendants continued to pursue the debt by seeking default judgment in the First Case, by sending additional debt collection letters, by filing a Second Case, and by serving process in the Second Case. Plaintiff then called the Constantino Defendants multiple times to reaffirm that he was not the debtor and that the debtor did not live at his address. Even after the phone calls, the Constantino Defendants continued to pursue the debt by seeking default judgment in the Second Case and by requesting access to private employment records. Although the Constantino Defendants may not have violated the FDCPA by initially pursuing a debt in reliance on information from the creditor, continuing to pursue the debt without confirming the debtor's information after multiple, clear notices that some of the debtor's information may have been incorrect is a violation of the FDCPA.

Although a consumer under the FDCPA is assumed to reside on the lower end of the scale of sophistication, a debt collector does not have the same luxury. The court concludes that a debt collector is violating the FDCPA by using "false, deceptive, or misleading representations or means in connection with the collection" of a debt if the debt collector continues to pursue debt collection activities against a consumer after receiving clear notice that the consumer is likely not the debtor and without undertaking any efforts to verify the debtor's actual information. 15 U.S.C. § 1692e (2012).

## THE BONA FIDE ERROR DEFENSE

The FDCPA provides an affirmative defense for a debt collector who has been found to violate the FDCPA "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 15 U.S.C. § 1692k(c). To assert this bona fide error defense, a debt collector has the burden of proving "that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006). To succeed on a motion for summary judgment, defendants are required to "establish a bona fide error for each and every alleged violation of the FDCPA." *Caputo v. Professional Recovery Services, Inc.*, 261 F. Supp. 2d 1249, 1259 (D. Kan. 2003).

The Tenth Circuit has clarified that "a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act." *Johnson*, 443 F.3d at 728. This "intent prong of the bona fide error defense is a subjective test," and "subjective intent can often only be shown by inferential evidence." *Id.* at 728-29. On the other hand, "the bona fide and the procedures prongs are necessarily objective

tests." *Id.* at 729. "[T]he bona fide component serves to impose an objective standard of reasonableness upon the asserted unintentional violation." *Id.* (citation and internal quotation marks omitted). "[T]he procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector maintained – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were reasonably adapted to avoid the specific error at issue." *Id.* (citations and internal quotation marks omitted).

Defendants argue that they have met the requirements to establish their defense under the FDCPA because they did not at any time intend to pursue debt collection activities against Plaintiff, but Plaintiff argues that Defendants have not shown that they are entitled to the bona fide error defense under the FDCPA because the error was intentional and not bona fide and because their procedures are not reasonably adapted to avoid the error in this case.

Each of the prongs of the bona fide error defense requires analysis in reference to a specific violation or error. In this case, the violation of the FDCPA at issue is continuing to target debt collection activities at Plaintiff's address after receiving multiple, clear notices that the Plaintiff's address may be different than the debtor's and without performing any research to determine whether the information was accurate. Given the evidence related to the violation in this case, it is difficult to infer anything other than that the Constantino Defendants intentionally continued to target their debt collection efforts at Plaintiff after clear notice that his address was likely not the debtor's address. The court also concludes that the violation was not a bona fide error because the Constantino Defendants continued to make the same error after receiving clear notice that their actions were potentially violating the FDCPA.

Finally, the Constantino Defendants only point to two procedures that they claim are reasonably adapted to avoid the error at issue: providing a birthdate to the process servers and

sending initial debt collection letters before filing lawsuits. The Constantino Defendants have provided no evidence that they generally employed or implemented these procedures beyond showing that they used them in this case. In addition to not showing that the procedures have been generally implemented, the Constantino Defendants have not shown that the procedures were reasonably adapted to avoid continuing to target debt collection activities at an erroneous address. As is evidenced from the facts in this case, process servers rely almost exclusively on the name and address information when serving process and give little weight to other information such as birthdates. And sending debt collection letters to an erroneous address, in addition to itself potentially violating the FDCPA, does not help avoid targeting additional debt collection activities at the same address without a companion procedure requiring additional research or a stoppage of activity if notice of a potential error is given. The Constantino Defendants have not shown the existence of a companion procedure in this case.

Therefore, the court concludes that the Constantino Defendants have not established that they are entitled to the bona fide error defense.

### THE UTAH CONSUMER SALES PRACTICES ACT

The Utah Consumer Sales Practices Act (UCSPA) "generally prohibits [either] deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction." *Carlie v. Morgan*, 922 P.2d 1, 5-6 (Utah 1996) (internal quotation marks omitted); *see also* Utah Code Ann. § 13-11-2(2). Under the UCSPA, any unconscionable or deceptive act or practice is prohibited "whether it occurs before, during, or after the transaction." Utah Code Ann. § 13-11-4(1). This court has previously held that "attorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA," *Brown v. Constantino*, No. 2:09CV357DAK, 2009 WL 3617692, at *4 (D. Utah Oct. 27, 2009), and are

subject to the Act when they are acting "in connection with a consumer transaction," Utah Code Ann. § 13-11-4 and 13-11-5.

"[T]he plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice." *Martinez v. Best Buy Co.*, 283 P.3d 521, 523 (Utah App. 2012); *see also* Utah Code Ann. § 13-11-4(2). In order to conclude as a matter of law on summary judgment that a practice or act is deceptive under the UCSPA, the court must determine that no genuine issue of material fact exists that "the requisite intent to deceive was . . . present." *Wade v. Jobe*, 818 P.2d 1006, 1016 (Utah 1991).

On the other hand, "unconscionability is a question of law" because it "does not require proof of specific intent but can be found by considering circumstances which the supplier 'knew or had reason to know.'" *Id.* at 1017 (quoting Utah Code Ann. § 13-11-5(3)). Although the determination of unconscionability is a question of law for the court, the court must give the parties "a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination." Utah Code Ann. § 13-11-5(2). Utah distinguishes between procedural and substantive unconscionability, and Plaintiff only alleges substantive unconscionability, which occurs when conditions "oppress or unfairly surprise an innocent party." *Wade*, 818 P.2d at 1016-17; *see also Resource Management Co. v. Weston Ranch and Livestock*, 706 P.2d 1028, 1041 (Utah 1985).

"A supplier who violates the UCSPA can be liable to the consumer for damages and court costs." *Burnett v. Mortgage Registration Sys., Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013); *see also* Utah Code Ann. § 13–11–19(2). By its own terms, "[t]he UCSPA 'shall be construed liberally' to 'protect consumers from suppliers who commit deceptive and unconscionable sales

practices.'" *Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 WL 247571, at *6 (D. Utah Jan. 20, 2016) (quoting Utah Code Ann. § 13-11-2).

Plaintiff argues that the Constantino Defendants' actions were both deceptive and unconscionable under the UCSPA because they knowingly and intentionally sued Plaintiff on two separate occasions for a debt that he did not owe. The Constantino Defendants argue that they did not knowingly or intentionally commit a deceptive act because their only intent was to collect a debt from Gallegos, Sr., and that the undisputed facts show that their actions were not unconscionable because it is appropriate and lawful for a debt collector to pursue a debt collection against a debtor.

In its discussion on the FDCPA, the court has already concluded that, from the perspective of the least-sophisticated consumer, the Constantino Defendants used false, deceptive, or misleading representations or means in the collection of a debt. However, the court also recognized that, although they were not readily available to the Plaintiff, several of the records included the birthdate and Social Security number of Gallegos, Sr. A genuine issue of material facts exists as to whether the Constantino Defendants knowingly and intentionally sought to deceive the Plaintiff. The court concludes that a reasonable jury could determine that the Constantino Defendants knowingly and intentionally performed deceptive acts or practices, so summary judgment in favor of the Constantino Defendants on the deceptive acts or practices portion of the UCSPA is not proper.

Although summary judgment is not appropriate on the deceptive acts or practices portion of the UCSPA, summary judgment is appropriate on the unconscionable acts or practices portion of the UCSPA. The standard for proving unconscionability is high. Even considering the information that the Constantino Defendants had reason to know, Plaintiff has not shown that the

Constantino Defendants' actions in sending debt collection letters to and filing and serving two lawsuits at an incorrect address rise to the level of oppression or unfair surprise required to constitute unconscionability. Therefore, the court concludes, as a matter of law, that the actions of the Constantino Defendants were not unconscionable under the UCSPA.[1]

## INVASION OF PRIVACY

Under the Second Restatement of Torts, which Utah uses as a model, the tort of intrusion upon seclusion "consists solely of an intentional interference with [a plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1521 (D. Utah 1997) (quoting Restatement (Second) of Torts § 652B cmt. a (1977)). The core question at issue "is whether the Defendants' actions substantially intruded upon Plaintiff's private life in a way that would be highly offensive to the reasonable person." *Id.* To prove a claim of intrusion upon seclusion, Plaintiff must show (1) that there was an intentional, substantial intrusion, physical or otherwise, upon his solitude or seclusion; and (2) the intrusion would be highly offensive to the reasonable person. *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378-79 (Utah Ct. App. 1997) (citations omitted); *see also Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2015 WL 926146, at *3 (D. Utah Mar. 4, 2015).

The Constantino Defendants argue that they did not invade Plaintiff's privacy because they did not pursue an action against him, the alleged intrusion was not intentional or substantial, and the alleged invasion was not highly offensive. Plaintiff argues that a rational person would

---

[1] As an alternative to his opposition to the Constantino Defendants' Cross-Motion for Summary Judgment, Plaintiff filed a Motion for Discovery Under Rule 56(d). Because the court is ruling in Plaintiff's favor on all aspects of summary judgment except the unconscionability portion of the UCSPA, Plaintiff's Rule 56(d) motion is moot except as it relates to unconscionability. Because the court's ruling on unconscionability is based on undisputed facts related to the Constantino Defendants' actions, the court does not believe additional discovery will change its decision on this point. Therefore, the court denies Plaintiff's Motion for Discovery Under Rule 56(d).

consider being pursued relentlessly and sued twice for a debt they didn't owe as a substantial, highly offensive intrusion into their solitude and seclusion, which violates the right of privacy.

Because the invasion of privacy requires proof of intentional conduct by a defendant, the court concludes that, just like the deceptive acts or practices portion of the UCSPA, a genuine issue of material facts exists as to whether the Constantino Defendants intentionally intruded on Plaintiff's solitude or seclusion in a manner that would be highly offensive to a reasonable man.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment [Docket No. 26] is GRANTED. The Constantino Defendants' Cross-Motion for Summary Judgment [Docket No. 28] is DENIED in part and GRANTED in part with respect to the unconscionability portions of the UCSPA. As discussed in a footnote above, Plaintiff's Motion for Discovery Under Rule 56(d) [Docket No. 32] is also DENIED.

DATED this 10th day of March, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge